NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1707
_____

ANTHONY FOX,
                    Appellant

v.

BAYSIDE STATE PRISON; NEW JERSEY DEPARTMENT OF CORRECTIONS;
RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY;
THE UNIVERSITY OF MEDICINE & DENTISTRY OF NEW JERSEY;
JOHN POWELL, Individually and as Administrator of Bayside State Prison;
GARY M. LANIGAN, Individually and as Commissioner of the New Jersey
Department of Corrections; JOHN DOES NOC. 1-25 OF BAYSIDE STATE PRISON
_____

On Appeal from the United States District Court
for the District of New Jersey
(D. N.J. No. 1-14-cv-05344)
District Court Judge:  Honorable Robert B. Kugler
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 15, 2017

Before:  CHAGARES, RESTREPO and FISHER, *Circuit Judges*.

(Filed: March 2, 2018)
_____

OPINION[*]
_____

_____

        [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

FISHER, *Circuit Judge*.

Anthony Fox was an inmate at Bayside State Prison in Leesburg, New Jersey. Based on a medical mishap, Fox filed a 42 U.S.C. § 1983 claim against Bayside and associated entities. The District Court dismissed Fox's claims, and we will affirm.

I

In August 2012, Fox reported to the prison infirmary complaining of dizziness. After discovering that Fox's blood pressure was elevated, the infirmary nurse injected him with medication. Fox subsequently lost consciousness and fell to the floor, suffering injuries to his face and nose. Fox was taken to the hospital, and upon his return officials placed him in "lock-up." The parties do not define the term lock-up, but we assume it denotes a punitive confinement status. Fox was placed in lock-up upon suspicion that his loss of consciousness was precipitated by some form of drug abuse. Fox remained in lock-up for about three weeks and was released when toxicology results disproved officials' drug use suspicions.

Fox alleges that his medical treatment upon his return to Bayside was improper. Fox eventually underwent surgery to repair his nose damage, but claims that his surgery was too long delayed and insufficient. He alleges that Bayside officials continue to deny him additional, necessary surgeries. As a result, Fox suffers from significant breathing issues and facial deformity.

2

Fox filed a civil rights complaint under 42 U.S.C. § 1983 against Bayside State Prison, the New Jersey Department of Corrections (DOC), Bayside administrator John Powell, and DOC Commissioner Gary Lanigan.[1] Fox's complaint focuses on alleged deficiencies in his medical treatment and his placement in lock-up. The District Court dismissed the claims against Bayside and the DOC on sovereign immunity grounds. To the extent Powell and Lanigan were sued in their official capacities, they also fell within the District Court's sovereign immunity ruling. As to their individual capacities, the District Court dismissed under Federal Rule of Civil Procedure 12(b)(6).[2]

II

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We review a District Court's dismissal based on sovereign immunity under a plenary standard.[3] We apply the same standard when reviewing a dismissal under Rule 12(b)(6).[4] In reviewing Fox's complaint, we accept all well-pled allegations as true and draw all reasonable inferences in his favor.[5]

---

[1] Fox's suit also named Rutgers University and the University of Medicine and Dentistry of New Jersey as defendants. The District Court granted summary judgment as to those defendants, and Fox has not appealed those rulings.

[2] Fox does not challenge the District Court's dismissal of his related state law claims.

[3] *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 (3d Cir. 1996).

[4] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006).

[5] *Id.*

## III

### *A. Sovereign Immunity*

The Eleventh Amendment bars suits against state governments in federal courts. This immunity extends to any entity that is an arm of the state.[6] We have adopted a three-part test to determine whether an entity is an arm of the state,[7] but a detailed application of that test is unnecessary here. The DOC is quintessentially an arm of the state and is funded by, controlled by, and accountable to the state.[8] As a facility wholly owned and operated by the DOC, Bayside is similarly protected. In their official capacities, Powell and Lanigan are likewise protected because "a suit against a state official in his or her official capacity . . . is a suit against the official's office" that is "no different from a suit against the State itself."[9] Accordingly, the District Court did not err in applying sovereign immunity to these defendants.

### *B. Section 1983 Claims*

In their individual capacities, Powell and Lanigan are unprotected by sovereign immunity and subject to suit under 42 U.S.C. § 1983. The gravamen of Fox's complaint is that the medical care he received at Bayside—both before and after his injury—was

---

[6] *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429–30 (1997).
[7] *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989).
[8] *See Snyder v. Baumecker*, 708 F. Supp. 1451, 1455–56 (D.N.J. 1989) (describing the characteristics of the DOC); *cf. Koslow v. Pennsylvania*, 302 F.3d 161, 169 (3d Cir. 2002) (determining that the Pennsylvania DOC was entitled to sovereign immunity and then analyzing whether Congress had abrogated said immunity by statute).
[9] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

deficient. In so pleading, Fox invokes terms indicative of two distinct theories of relief under § 1983: failure to supervise and deliberate indifference. On both counts, however, Fox's pleadings are deficient.

To state a claim for failure to supervise, a plaintiff must:

> identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.[10]

In this vein, Fox avers that "defendants were aware of . . . the need for additional rules, regulations, testing, policies, [and] procedures"[11] to provide adequate medical care to inmates, but the complaint is fatally lacking in detail. At the outset, Fox fails to identify a specific policy to undergird his claim, which necessarily forecloses the possibility of adequately pleading that any risk associated with the policy was unreasonable, that prison officials were aware of and indifferent to this risk, and that the specific policy led to his injury. Accordingly, Fox fails to plead a valid failure to supervise claim.

An official's deliberate indifference to an individual's constitutional rights provides an alternative basis for relief under § 1983. As relevant here, a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the

_____

[10] *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015) (per curiam).

[11] App. 33.

5

Eighth Amendment.[12] To plead such a claim, however, it is necessary—though not sufficient—to allege that the "official was subjectively aware of the risk."[13] Fox claims that the "conduct of defendants . . . constituted a breach of . . . duty and was in deliberate indifference to the danger and substantial risk facing plaintiff,"[14] but the complaint lacks any assertion that either Powell or Lanigan was aware of any risk in this case, let alone "a substantial risk of serious harm."[15] Thus, the complaint fails to state a deliberate indifference claim.

IV

For all of these reasons, we will affirm the District Court's judgment.

---

[12] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

[13] *Id.* at 829.

[14] App. 33.

[15] *Farmer*, 511 U.S. at 829. The complaint does allege that "Lanigan[] had specific knowledge of the within conduct and policy and practice and took no steps to prevent said actions," App. 32, but this assertion falls quite short of identifying a specific policy and alleging that Lanigan was subjectively aware that this policy posed a substantial risk of serious harm.